UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ANTHONY LINDSEY,

                Plaintiff,             11 Civ. 9102 (RWS)

   -against-                        OPINION
                                            &
                                     ORDER

DETECTIVE SEAN BUTLER, et al.,

                Defendants.

------------------------------------------X



A P P E A R A N C E S:

        Plaintiff Pro Se

        Anthony Lindsey
        DIN # 11-A-2302
        Southport Correctional Facility
        P.O. Box 2000
        Pine City, NY  14871

        Attorney for Defendants

        NEW YORK CITY LAW DEPARTMENT
        100 Church Street
        New York, New York 10007
        By:  Melanie M. Speight, Esq.

**Sweet, D.J.**

Plaintiff Anthony Lindsey ("Lindsey" or "Plaintiff"),
proceeding pro se, has moved to amend his complaint pursuant to
Fed. R. Civ. P. 15(a).  Plaintiff's motion is granted in part
and denied in part.

**Prior Proceedings**

Plaintiff filed his initial complaint ("Complaint") on
December 12, 2011, alleging that while he was being detained at
a police station following his arrest on December 16, 2008,
several police officers restrained Plaintiff while an NYPD
detective forcibly shaved Plaintiff's facial hair prior to
Plaintiff being produced in a lineup.  The Complaint named as
defendants Detective Sean Butler ("Butler"), Detective Richard
Werner ("Werner"), Commissioner Raymond Kelly ("Kelly"), the New
York City Police Department ("NYPD") and the City of New York
("City", and collectively, "Defendants"), and construed
liberally,[1] purported to assert causes of action pursuant to 42

---

[1] A pro se litigant's pleading is construed liberally, and is
read as raising the strongest possible arguments it suggests.
Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).

1

U.S.C. § 1983 for violation of Plaintiff's rights under the
First, Fourth, Eighth and Fourteenth Amendments.

    Defendants moved to dismiss the Complaint on November
30, 2012 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to
state a claim.  Plaintiff did not submit any opposition to the
motion to dismiss, but did make a submission received on January
18, 2013 entitled "Motion to Amend Pursuant to Fed. R. Civ. P.
15(a)," which attached a proposed amended complaint ("PAC").
Construed liberally, see Pabon, 459 F.3d at 248, the PAC
purports to assert a Monell claim against the City, as well as
claims against the other defendants for violations of: (i)
Plaintiff's right to free exercise of religion pursuant to the
First Amendment; (ii) Plaintiff's right to equal protection and
due process pursuant to the Fourteenth Amendment; (iii)
Plaintiff's right against self incrimination pursuant to the
Fifth Amendment; (iv) Plaintiff's right to counsel pursuant to
the Sixth Amendment.

    Since Plaintiff is proceeding pro se, his January 18,
2013 submission is construed as a both a withdrawal of his
initial complaint as well as a motion for leave to file an

2

amended complaint pursuant to Fed. R. Civ. P. 15(a).[2] See
Alvarez v. City of New York, No. 10 Civ. 6130 (RWS), 2012 WL
3298131, at *1 (S.D.N.Y. Aug. 13, 2012) (quoting LeSane v.
Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001))
("[P]ro se plaintiffs should be granted special leniency
regarding procedural matters").

Defendants submitted an opposition to the motion to
amend on January 23, 2013, contending that the motion should be
denied because the Plaintiff has failed to state a claim even
with the proposed amendments to the initial complaint, thereby
rendering amendment futile, see Burch v. Pioneer Credit
Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

The motion to amend was taken on submission on
February 8, 2013.

**Discussion**

A motion to amend is governed by Fed. R. Civ. P.
15(a), which provides that leave to amend should be freely
granted when justice so requires. Id. However, a court may

---

[2] Accordingly, the Defendants' motion to dismiss the initial
complaint is moot.

3

deny leave to amend in the event that the proposed amended
complaint fails to state a claim, thereby rendering amendment
futile.  Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir.
1990).  "The party opposing a motion to amend has the burden of
demonstrating that a proposed amendment would be futile." NECA-
IBEW Pension Trust Fund v. Bank of America, No. 10 Civ. 440
(LAK)(HPB), 2013 WL 620257, at *4 (S.D.N.Y. Feb. 15, 2013).


Plaintiff's First Amendment Free Exercise Claim


        Defendants have contended that the PAC fails to state
a claim for violation of Plaintiff's right to free exercise of
religion because courts have held that shaving an inmate's
facial hair does not constitute a violation of the inmate's free
exercise right when the shaving occurs pursuant to a legitimate
penological interest.  However, the cases cited by Defendants in
support of this position address only the restriction of the
First Amendment rights of individuals incarcerated in *prisons*,
see Singh v. Goord, 520 F. Supp. 2d 487, 494 (S.D.N.Y. 2007)
(noting that plaintiff was incarcerated in Fishkill Correctional
Facility)[3]; Vann v. Fischer, No. 11 Civ. 1958 (JPO), 2012 WL

---

[3] See Shain v. Ellison, 273 F.3d 56, 65 (2d Cir. 2001) (noting
that "in New York . . . state correctional facilities [are]
commonly referred to as prisons . . .").

2384428, at *1 (S.D.N.Y. June 21, 2012) (noting that plaintiff

is "being held by the New York State Department of

Corrections"), whereas the events giving rise to the instant

suit occurred when Plaintiff was merely detained in a police

station following his arrest, and had not yet even been charged

with a crime.  PAC ¶ 11.  At that point, Plaintiff was certainly

not in a "prison," which is defined in this Circuit as a

facility that "house[s] those convicted those convicted of the

most serious crimes," Shain v. Ellison, 273 F.3d 56, 65 (2d Cir.

2001) (quoting BLACK'S LAW DICTIONARY 1213 (7th ed. 1999)), but

rather was at most considered to be in a "jail," which this

Circuit defines as "a place where persons awaiting trial or

those convicted of misdemeanors are confined."  Id.  The Second

Circuit has held that the threshold for impinging upon the

constitutional rights of those in prisons is different – and

lower – than the threshold for those in jails.  See Harriston v.

Mead, No. 05 CV 2058 (RJD)(LB), 2008 WL 4507608, at *3 n. 2

(S.D.N.Y. Sept. 30, 2008) (noting that in Shain, the Second

Circuit "concluded that in jails [the] individualized reasonable

suspicion test applies" whereas in prisons, the "more

deferential 'legitimate penological interest' test" controls).

        Defendants have not presented any authority showing

that Plaintiff's First Amendment rights were subject to

limitation pursuant to legitimate penological interest, given that at the time of the alleged constitutional violations, Plaintiff was an uncharged arrestee being detained in a police station.  Accordingly, Defendants have not satisfied their burden of showing that amendment of those claims would be futile.[4]

Plaintiff's Fourteenth Amendment Equal Protection Claim

To state an equal protection claim, a plaintiff must allege that he was treated differently than similarly situated individuals as a result of his membership in an identifiable class.  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Plaintiff has alleged in the PAC that the detectives who forcibly shaved his facial hair did so after noting that the other "fillers" brought to the police station to participate in the lineup alongside Plaintiff were all clean shaven.  PAC ¶ 32. This allegation dooms Plaintiff's equal protection claim, because he does not allege that the detective's decision to engage in the forcible shaving resulted from Plaintiff's membership in a protected class (in this case, Muslims), but

---

[4] To the extent that Defendants advance the same argument with respect to Plaintiff's equal protection claim, that argument fails for the reasons discussed above.

rather that it was the result of a desire by the detectives to avoid placing Plaintiff into a constitutionally-deficient lineup. See, e.g., United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (discussing the identification problems that can arise "[w]hen the appearance of participants in a lineup is not uniform with respect to a given characteristic . . .").  Accordingly, amendment is futile with respect to Plaintiff's Fourteenth Amendment equal protection claim.

Plaintiff's Fourteenth Amendment Due Process Claim

Plaintiff has alleged in the PAC that the Defendants violated his constitutional rights by using excessive force in "physically restraining his person, rear-cuffing him, knocking him to the ground, and shaving his facial hair, while being held down by three unidentified defendants."  PAC ¶ 20.  Plaintiff's excessive force claim is construed as a due process claim under the Fourteenth Amendment. See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) ("The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.").[5]  "Due

---

[5] Defendants have cited to Graham v. Connor, 490 U.S. 386, 395 (1989) for the contention that Plaintiff's claim is analyzed under the Fourth Amendment, but the Graham Court held only that a Fourth Amendment analysis was proper for allegedly illegal

7

Process protects a pretrial detainee from the use of excessive force that amounts to punishment." Rivera v. State of N.Y., No. 96 Civ. 7697 (RWS), 1999 WL 13240, at *10 (S.D.N.Y. Jan. 12, 1999) (quoting Graham, 490 U.S. at 395 n. 10).

The Second Circuit has held that

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), rejected on other grounds by Graham, 490 U.S. at 397.

---

seizures that occurred *during the course of an arrest*, and expressly noted that it was not resolving the issue of whether the Fourth Amendment continues to provide protection "beyond the point at which the arrest ends and pretrial detention begins." Id. at 395 n. 10. Here, the complained-of conduct happened after Plaintiff had been arrested and was already within the confines the police station, PAC ¶ 11, and therefore it is analyzed under the Fourteenth Amendment. See Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997) (holding that "[b]ecause the harm inflicted did not occur in the course of an attempted arrest or apprehension . . . the claim was not one of a Fourth Amendment violation but of the violation of the substantive due process right under the Fourteenth Amendment).

8

There appears to be only a single case in the Circuit
addressing the forcible shaving of a detainee in the context of
a due process analysis.  In Ross v. Coughlin, 669 F. Supp. 1235
(S.D.N.Y. 1987), Ross, an inmate in custody of New York State's
Department of Correctional Services asserted, *inter alia*, a
Fourteenth Amendment due process claim for use of excessive
force based upon the forcible shaving of his facial hair by
prison officials.  Id. at 1242.  In analyzing the claim, the
District Court applied the factors articulated by the Second
Circuit in Johnson, 481 F.2d at 1033, and found that "[u]sing
this test it is not clear whether Ross' due process rights have
been violated in this claim.  First, the forced shave was
roughly done and there is no indication that the officials
needed to use their clubs to get Ross to comply with their
orders.  Second, although Ross was not seriously injured the
force used does not appear to have been used in a good-faith
effort."  Ross, 669 F. Supp. at 1242.  Based on these
allegations, the District Court declined to dismiss Ross' due
process claim, and instead requested that Ross "submit
affidavits to confirm the extent of the violations."  Id.

The circumstances alleged by the plaintiff in Ross
bear a material similarity to those alleged by Plaintiff in the

9

PAC.  As in Ross, the Plaintiff here has alleged that the
shaving was conducted in a rough manner, PAC ¶ 20, and there is
no indication that the force allegedly used by the officers was
absolutely necessary in order for the shaving to occur.  Id.
Moreover, while in Ross the Court noted that the plaintiff "was
not seriously injured," the Plaintiff here has alleged that as a
result of the force used during the shaving, he sustained "a
mild concussion from being slammed on the floor and hit [on] his
head, [and was] left [] dizzy with headaches" and also
experienced "lower back pain."  PAC 21.  Plaintiff has alleged
that he requested medical attention in the wake of the shaving
incident and that the request was denied by defendant Detective
Butler.  Id.  Given that one of the factors articulated in
Johnson is "the extent of the injury inflicted," 481 F.2d at
1033, the allegations set forth by Plaintiff in the PAC would
appear to create an even more robust due process claim than in
Ross.


       The sole instance of directly on-point authority that
has been identified indicates that Plaintiff's allegations may
well be sufficient to state a due process claim, and Defendants
have not cited any on-point case law to the contrary.
Accordingly, Defendants have failed to demonstrate that
amendment of Plaintiff's due process claim is futile.

Plaintiff's Fifth and Sixth Amendment Claims

Defendants have met their burden of demonstrating
futility with respect to Plaintiff's Fifth and Sixth Amendment
claims.  Plaintiff has alleged that the Defendants violated his
Fifth Amendment right against self-incrimination because they
forcibly shaved his facial hair so as to "g[i]ve the victim
[viewing] the lineup some impression that [Plaintiff] resembled
the perpetrator . . . ."  PAC ¶ 29.  However, the Fifth
Amendment only protects the accused "from being compelled to
testify against himself or otherwise provide evidence of a
'testimonial or communicative nature,'" Reid v. City of New
York, No. 00 Civ. 5164 (RCC) (JCF), 2004 WL 626228, at *12
(S.D.N.Y. Mar. 29, 2004) (quoting Scherer v. California, 384
U.S. 757, 761 (1966)), and "[i]t is well settled that compelled
participation in a lineup is not testimonial or communicative in
nature," Reid, 2004 WL 626228, at *12, even when the suspect is
forced to alter his appearance for the purpose of a see also
United States v. Wade, 388 U.S. 218, 222 (1967) (compelling a
robbery suspect to alter his appearance by wearing strips of
tape on his face while participating in a lineup did not violate
the suspect's Fifth Amendment rights).  Accordingly, the PAC
fails to state a claim for violation of Plaintiff's Fifth

11

Amendment right against self-incrimination, so amendment would be futile.

Plaintiff has also alleged that his Sixth Amendment right to counsel was violated because he requested counsel after being read his Miranda rights following his arrest, but was not given counsel at that time. It is well-established that the Sixth Amendment right to counsel "applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008). Thus, while a defendant is entitled to counsel in the context of a *postindictment* lineup, Missouri v. Frye, 132 S.Ct. 1399, 1405 (2012), such an entitlement does not exist for a preindictment lineup such as the one in which Plaintiff participated. At the time of that lineup, Plaintiff had not yet been charged with a crime and had not appeared before a judicial officer, so his Sixth Amendment right to counsel had not yet attached. The PAC therefore fails to state a claim for violation of Plaintiff's right to counsel, so amendment would be futile.

12

Plaintiff's *Monell* Claim


        Defendants have also met their burden of demonstrating
futility with respect to Plaintiff's Monell claim against the
City.  Plaintiff alleges that the City is liable pursuant 42
U.S.C. § 1983 because the detectives who participated in the
shaving of his beard "had been following [Commissioner Raymond
Kelly's] unwritten policies and practices to use excessive force
upon Plaintiff[,] a Muslim[,] to forcefully shave a Muslim's
beard without seeking a Court order for permission to do this []
as required by law."  PAC ¶ 35.


        Under Monell v. Dep't of Soc. Serv., 436 U.S. 658
(1978), in order to prevail on a §1983 claim against a
municipality, a plaintiff must allege a link between a
constitutional injury and "(1) municipal policy, (2) municipal
custom or practice, or (3) the decision of a municipal
policymaker with final policymaking authority."  Zherka v.
DiFiore, 412 Fed. Appx. 345, 348 (2d Cir. 2011); accord Vippolis
v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert.
denied, 489 U.S. 916 (1987).


        Here, Plaintiff has failed to allege a viable basis
for municipal liability against the City.  Plaintiff has made

                                13

conclusory allegations regarding the existence of "racist
policies and practices that discriminate against religion," PAC
¶ 37, and "unwritten policies and practices to use excessive
force upon . . . a Muslim," id. ¶ 35, but has provided no
evidence to support such claims except for the allegation that
on a single occasion his facial hair was shaved.  It is well-
settled that a single incident, without more, cannot create an
inference of an unconstitutional custom or policy.  Sarus v.
Rotundo, 831 F.2d 397, 402-03 (2d Cir. 1987).  Moreover,
"[b]oilerplate assertions of a municipal policy or custom . . .
without offering any accompanying factual support . . . are
insufficient to state a claim for Monell liability."  Guerrero
v. City of New York, No. 12 Civ. 2916 (RWS), 2013 WL 673872, at
*3 (S.D.N.Y. Feb. 25, 2013).

        Accordingly, the PAC does not plausibly allege any
facts from which a theory of municipal liability could be
inferred, so amendment is futile.

14

## Conclusion

For the above-stated reasons, Plaintiff's motion to amend the complaint is granted with respect to his First Amendment free exercise claim and his Fourteenth Amendment due process claim, and denied with respect to the remaining claims.

Plaintiff shall file and serve his amended complaint within 60 days of the date of this order.  The Defendants shall answer or otherwise move with respect to the amended complaint within 30 days of the date of service of the amended complaint.

It is so ordered.

New York, NY
June //, 2013

                          _____
                               ROBERT W. SWEET
                                 U.S.D.J.

15