UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ANTHONY LINDSEY,

                Plaintiff,          11 Civ. 9102 (RWS)

  -against-                               OPINION
                                                  &amp;
DETECTIVE SEAN BUTLER, et al.,         ORDER

                Defendants.

------------------------------------------X

A P P E A R A N C E S:

      <u>Plaintiff Pro Se</u>

      Anthony Lindsey
      DIN # 11-A-2302
      Southport Correctional Facility
      P.O. Box 2000
      Pine City, NY  14871

      <u>Attorney for Defendants</u>

      NEW YORK CITY LAW DEPARTMENT
      100 Church Street
      New York, New York 10007
      By:  Melanie M. Speight, Esq.

**Sweet, D.J.**

Plaintiff Anthony Lindsey ("Lindsey" or "Plaintiff"), proceeding pro se, has moved to amend his complaint pursuant to Fed. R. Civ. P. 15(a). Plaintiff's motion is granted in part and denied in part.

## Prior Proceedings

Plaintiff filed his initial complaint ("Complaint") on December 12, 2011, alleging that while he was being detained at a police station following his arrest on December 16, 2008, several police officers restrained Plaintiff while an NYPD detective forcibly shaved Plaintiff's facial hair prior to Plaintiff being produced in a lineup. The Complaint named as defendants Detective Sean Butler ("Butler"), Detective Richard Werner ("Werner"), Commissioner Raymond Kelly ("Kelly"), the New York City Police Department ("NYPD") and the City of New York ("City", and collectively, "Defendants"), and construed liberally,[1] purported to assert causes of action pursuant to 42

---

[1] A pro se litigant's pleading is construed liberally, and is read as raising the strongest possible arguments it suggests. Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).

1

U.S.C. § 1983 for violation of Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments.

Defendants moved to dismiss the Complaint on November 30, 2012 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Plaintiff did not submit any opposition to the motion to dismiss, but did make a submission received on January 18, 2013 entitled "Motion to Amend Pursuant to Fed. R. Civ. P. 15(a)," which attached a proposed amended complaint ("PAC").  Construed liberally, see Pabon, 459 F.3d at 248, the PAC purports to assert a Monell claim against the City, as well as claims against the other defendants for violations of: (i) Plaintiff's right to free exercise of religion pursuant to the First Amendment; (ii) Plaintiff's right to equal protection and due process pursuant to the Fourteenth Amendment; (iii) Plaintiff's right against self incrimination pursuant to the Fifth Amendment; (iv) Plaintiff's right to counsel pursuant to the Sixth Amendment.

Since Plaintiff is proceeding pro se, his January 18, 2013 submission is construed as a both a withdrawal of his initial complaint as well as a motion for leave to file an

2

amended complaint pursuant to Fed. R. Civ. P. 15(a).[2] See Alvarez v. City of New York, No. 10 Civ. 6130 (RWS), 2012 WL 3298131, at *1 (S.D.N.Y. Aug. 13, 2012) (quoting LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001)) ("[P]ro se plaintiffs should be granted special leniency regarding procedural matters").

Defendants submitted an opposition to the motion to amend on January 23, 2013, contending that the motion should be denied because the Plaintiff has failed to state a claim even with the proposed amendments to the initial complaint, thereby rendering amendment futile, see Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

The motion to amend was taken on submission on February 8, 2013.

**Discussion**

A motion to amend is governed by Fed. R. Civ. P. 15(a), which provides that leave to amend should be freely granted when justice so requires. Id. However, a court may

---

[2] Accordingly, the Defendants' motion to dismiss the initial complaint is moot.

deny leave to amend in the event that the proposed amended complaint fails to state a claim, thereby rendering amendment futile. Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990). "The party opposing a motion to amend has the burden of demonstrating that a proposed amendment would be futile." NECA-IBEW Pension Trust Fund v. Bank of America, No. 10 Civ. 440 (LAK)(HPB), 2013 WL 620257, at *4 (S.D.N.Y. Feb. 15, 2013).

Plaintiff's First Amendment Free Exercise Claim

Defendants have contended that the PAC fails to state a claim for violation of Plaintiff's right to free exercise of religion because courts have held that shaving an inmate's facial hair does not constitute a violation of the inmate's free exercise right when the shaving occurs pursuant to a legitimate penological interest. However, the cases cited by Defendants in support of this position address only the restriction of the First Amendment rights of individuals incarcerated in *prisons*, see Singh v. Goord, 520 F. Supp. 2d 487, 494 (S.D.N.Y. 2007) (noting that plaintiff was incarcerated in Fishkill Correctional Facility)[3]; Vann v. Fischer, No. 11 Civ. 1958 (JPO), 2012 WL

---

[3] See Shain v. Ellison, 273 F.3d 56, 65 (2d Cir. 2001) (noting that "in New York . . . state correctional facilities [are] commonly referred to as prisons . . .").

4

2384428, at *1 (S.D.N.Y. June 21, 2012) (noting that plaintiff is "being held by the New York State Department of Corrections"), whereas the events giving rise to the instant suit occurred when Plaintiff was merely detained in a police station following his arrest, and had not yet even been charged with a crime. PAC ¶ 11. At that point, Plaintiff was certainly not in a "prison," which is defined in this Circuit as a facility that "house[s] those convicted those convicted of the most serious crimes," Shain v. Ellison, 273 F.3d 56, 65 (2d Cir. 2001) (quoting BLACK'S LAW DICTIONARY 1213 (7th ed. 1999)), but rather was *at most* considered to be in a "jail," which this Circuit defines as "a place where persons awaiting trial or those convicted of misdemeanors are confined." Id. The Second Circuit has held that the threshold for impinging upon the constitutional rights of those in prisons is different – and lower – than the threshold for those in jails. See Harriston v. Mead, No. 05 CV 2058 (RJD)(LB), 2008 WL 4507608, at *3 n. 2 (S.D.N.Y. Sept. 30, 2008) (noting that in Shain, the Second Circuit "concluded that in jails [the] individualized reasonable suspicion test applies" whereas in prisons, the "more deferential 'legitimate penological interest' test" controls).

Defendants have not presented any authority showing that Plaintiff's First Amendment rights were subject to

5

limitation pursuant to legitimate penological interest, given that at the time of the alleged constitutional violations, Plaintiff was an uncharged arrestee being detained in a police station. Accordingly, Defendants have not satisfied their burden of showing that amendment of those claims would be futile.[4]

Plaintiff's Fourteenth Amendment Equal Protection Claim

To state an equal protection claim, a plaintiff must allege that he was treated differently than similarly situated individuals as a result of his membership in an identifiable class. Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Plaintiff has alleged in the PAC that the detectives who forcibly shaved his facial hair did so after noting that the other "fillers" brought to the police station to participate in the lineup alongside Plaintiff were all clean shaven. PAC ¶ 32. This allegation dooms Plaintiff's equal protection claim, because he does not allege that the detective's decision to engage in the forcible shaving resulted from Plaintiff's membership in a protected class (in this case, Muslims), but

---

[4] To the extent that Defendants advance the same argument with respect to Plaintiff's equal protection claim, that argument fails for the reasons discussed above.

6

rather that it was the result of a desire by the detectives to avoid placing Plaintiff into a constitutionally-deficient lineup. See, e.g., United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (discussing the identification problems that can arise "[w]hen the appearance of participants in a lineup is not uniform with respect to a given characteristic . . ."). Accordingly, amendment is futile with respect to Plaintiff's Fourteenth Amendment equal protection claim.

Plaintiff's Fourteenth Amendment Due Process Claim

Plaintiff has alleged in the PAC that the Defendants violated his constitutional rights by using excessive force in "physically restraining his person, rear-cuffing him, knocking him to the ground, and shaving his facial hair, while being held down by three unidentified defendants." PAC ¶ 20. Plaintiff's excessive force claim is construed as a due process claim under the Fourteenth Amendment. See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) ("The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.").[5] "Due

---

[5] Defendants have cited to Graham v. Connor, 490 U.S. 386, 395 (1989) for the contention that Plaintiff's claim is analyzed under the Fourth Amendment, but the Graham Court held only that a Fourth Amendment analysis was proper for allegedly illegal

7

Process protects a pretrial detainee from the use of excessive force that amounts to punishment." Rivera v. State of N.Y., No. 96 Civ. 7697 (RWS), 1999 WL 13240, at *10 (S.D.N.Y. Jan. 12, 1999) (quoting Graham, 490 U.S. at 395 n. 10).

> The Second Circuit has held that
>
>> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), rejected on other grounds by Graham, 490 U.S. at 397.

---

seizures that occurred *during the course of an arrest*, and expressly noted that it was not resolving the issue of whether the Fourth Amendment continues to provide protection "beyond the point at which the arrest ends and pretrial detention begins." Id. at 395 n. 10. Here, the complained-of conduct happened after Plaintiff had been arrested and was already within the confines the police station, PAC ¶ 11, and therefore it is analyzed under the Fourteenth Amendment. See Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997) (holding that "[b]ecause the harm inflicted did not occur in the course of an attempted arrest or apprehension . . . the claim was not one of a Fourth Amendment violation but of the violation of the substantive due process right under the Fourteenth Amendment).

8

There appears to be only a single case in the Circuit addressing the forcible shaving of a detainee in the context of a due process analysis. In Ross v. Coughlin, 669 F. Supp. 1235 (S.D.N.Y. 1987), Ross, an inmate in custody of New York State's Department of Correctional Services asserted, *inter alia*, a Fourteenth Amendment due process claim for use of excessive force based upon the forcible shaving of his facial hair by prison officials. Id. at 1242. In analyzing the claim, the District Court applied the factors articulated by the Second Circuit in Johnson, 481 F.2d at 1033, and found that "[u]sing this test it is not clear whether Ross' due process rights have been violated in this claim. First, the forced shave was roughly done and there is no indication that the officials needed to use their clubs to get Ross to comply with their orders. Second, although Ross was not seriously injured the force used does not appear to have been used in a good-faith effort." Ross, 669 F. Supp. at 1242. Based on these allegations, the District Court declined to dismiss Ross' due process claim, and instead requested that Ross "submit affidavits to confirm the extent of the violations." Id.

The circumstances alleged by the plaintiff in Ross bear a material similarity to those alleged by Plaintiff in the

9

PAC. As in Ross, the Plaintiff here has alleged that the shaving was conducted in a rough manner, PAC ¶ 20, and there is no indication that the force allegedly used by the officers was absolutely necessary in order for the shaving to occur. Id. Moreover, while in Ross the Court noted that the plaintiff "was not seriously injured," the Plaintiff here has alleged that as a result of the force used during the shaving, he sustained "a mild concussion from being slammed on the floor and hit [on] his head, [and was] left [] dizzy with headaches" and also experienced "lower back pain." PAC 21. Plaintiff has alleged that he requested medical attention in the wake of the shaving incident and that the request was denied by defendant Detective Butler. Id. Given that one of the factors articulated in Johnson is "the extent of the injury inflicted," 481 F.2d at 1033, the allegations set forth by Plaintiff in the PAC would appear to create an even more robust due process claim than in Ross.

The sole instance of directly on-point authority that has been identified indicates that Plaintiff's allegations may well be sufficient to state a due process claim, and Defendants have not cited any on-point case law to the contrary. Accordingly, Defendants have failed to demonstrate that amendment of Plaintiff's due process claim is futile.

10

Plaintiff's Fifth and Sixth Amendment Claims

Defendants have met their burden of demonstrating futility with respect to Plaintiff's Fifth and Sixth Amendment claims.  Plaintiff has alleged that the Defendants violated his Fifth Amendment right against self-incrimination because they forcibly shaved his facial hair so as to "g[i]ve the victim [viewing] the lineup some impression that [Plaintiff] resembled the perpetrator . . . ." PAC ¶ 29.  However, the Fifth Amendment only protects the accused "from being compelled to testify against himself or otherwise provide evidence of a 'testimonial or communicative nature,'" Reid v. City of New York, No. 00 Civ. 5164 (RCC) (JCF), 2004 WL 626228, at *12 (S.D.N.Y. Mar. 29, 2004) (quoting Scherer v. California, 384 U.S. 757, 761 (1966)), and "[i]t is well settled that compelled participation in a lineup is not testimonial or communicative in nature," Reid, 2004 WL 626228, at *12, even when the suspect is forced to alter his appearance for the purpose of a see also United States v. Wade, 388 U.S. 218, 222 (1967) (compelling a robbery suspect to alter his appearance by wearing strips of tape on his face while participating in a lineup did not violate the suspect's Fifth Amendment rights).  Accordingly, the PAC fails to state a claim for violation of Plaintiff's Fifth

Amendment right against self-incrimination, so amendment would be futile.

Plaintiff has also alleged that his Sixth Amendment right to counsel was violated because he requested counsel after being read his Miranda rights following his arrest, but was not given counsel at that time. It is well-established that the Sixth Amendment right to counsel "applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008). Thus, while a defendant is entitled to counsel in the context of a *postindictment* lineup, Missouri v. Frye, 132 S.Ct. 1399, 1405 (2012), such an entitlement does not exist for a preindictment lineup such as the one in which Plaintiff participated. At the time of that lineup, Plaintiff had not yet been charged with a crime and had not appeared before a judicial officer, so his Sixth Amendment right to counsel had not yet attached. The PAC therefore fails to state a claim for violation of Plaintiff's right to counsel, so amendment would be futile.

Plaintiff's *Monell* Claim

Defendants have also met their burden of demonstrating futility with respect to Plaintiff's Monell claim against the City. Plaintiff alleges that the City is liable pursuant 42 U.S.C. § 1983 because the detectives who participated in the shaving of his beard "had been following [Commissioner Raymond Kelly's] unwritten policies and practices to use excessive force upon Plaintiff[,] a Muslim[,] to forcefully shave a Muslim's beard without seeking a Court order for permission to do this [] as required by law." PAC ¶ 35.

Under Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978), in order to prevail on a §1983 claim against a municipality, a plaintiff must allege a link between a constitutional injury and "(1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." Zherka v. DiFiore, 412 Fed. Appx. 345, 348 (2d Cir. 2011); accord Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 489 U.S. 916 (1987).

Here, Plaintiff has failed to allege a viable basis for municipal liability against the City. Plaintiff has made

conclusory allegations regarding the existence of "racist policies and practices that discriminate against religion," PAC ¶ 37, and "unwritten policies and practices to use excessive force upon . . . a Muslim," id. ¶ 35, but has provided no evidence to support such claims except for the allegation that on a single occasion his facial hair was shaved. It is well-settled that a single incident, without more, cannot create an inference of an unconstitutional custom or policy. Sarus v. Rotundo, 831 F.2d 397, 402-03 (2d Cir. 1987). Moreover, "[b]oilerplate assertions of a municipal policy or custom . . . without offering any accompanying factual support . . . are insufficient to state a claim for Monell liability." Guerrero v. City of New York, No. 12 Civ. 2916 (RWS), 2013 WL 673872, at *3 (S.D.N.Y. Feb. 25, 2013).

Accordingly, the PAC does not plausibly allege any facts from which a theory of municipal liability could be inferred, so amendment is futile.

14

## Conclusion

For the above-stated reasons, Plaintiff's motion to amend the complaint is granted with respect to his First Amendment free exercise claim and his Fourteenth Amendment due process claim, and denied with respect to the remaining claims.

Plaintiff shall file and serve his amended complaint within 60 days of the date of this order. The Defendants shall answer or otherwise move with respect to the amended complaint within 30 days of the date of service of the amended complaint.

It is so ordered.

New York, NY
June 1&, 2013

_____
ROBERT W. SWEET
U.S.D.J.