UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
ANTHONY LINDSEY,                                            :
                                                           :        **OPINION AND ORDER**
                                        Plaintiff,         :
                                                           :          11 CV. 9102 (ER)
                - against -                                 :
                                                           :
DETECTIVE SEAN BUTLER, DETECTIVE RICHARD    :
WERNER, RAYMOND KELLY, Commissioner of the    :
N.Y.P.D., and CITY OF NEW YORK,                  :
                                                           :
                                        Defendants.        :
------------------------------------------------------------------------x

Ramos, D.J.:

        *Pro se* plaintiff Anthony Lindsey ("Plaintiff" or "Lindsey") brings this suit pursuant to 42

U.S.C. § 1983.  Lindsey alleges that on December 16, 2008, Detective Sean Butler, Detective

Richard Werner,[1] Commissioner Raymond Kelly, and the City of New York (collectively,

"Defendants") violated his constitutional rights during post-arrest questioning at the New York

Police Department's ("NYPD") Manhattan Robbery Squad Building.[2]  Plaintiff claims that his

rights under the First, Fourth, Eighth, and Fourteenth Amendments were violated because NYPD

officers forcibly shaved his facial hair, which he is required to maintain in keeping with his

Muslim faith.  Pending before the Court is Defendants' motion to dismiss the Amended

Complaint ("Am. Compl.").  Doc. 41.  For the reasons set forth below, Defendants' motion to

dismiss is GRANTED in part and DENIED in part.

---

[1] Detective Werner has yet to be served.

[2] The Court is aware of the existence of the NYPD's Manhattan Robbery Squad, but is unfamiliar with the
Manhattan Robbery Squad Building.

## I.    Background[3]

### a.    Factual Background

Plaintiff, a practicing Black Sunni Muslim, was arrested on December 16, 2008, by Detective Sean Butler ("Detective Butler") and Detective Richard Werner ("Detective Werner") of the NYPD.  Am. Compl. ¶¶ 8, 10.  Plaintiff was transported to the NYPD's Sixth Precinct before being transferred to the Manhattan Robbery Squad Building.  *Id.* ¶ 11.

At a certain point during several hours of questioning, Detectives Butler and Werner arranged for a police lineup.  *Id.* ¶ 29.  When the "fillers" arrived for the lineup, the detectives realized that they were all "clean shaven and none were similar to Plaintiff."  *Id.*  Because the detectives "could not place [Plaintiff] in the line-up where Plaintiff was [the] only one with facial hair," they asked Lindsey "if he would forfeit his religious rights and allow them to shave his face."  *Id.*  Plaintiff objected, "NO!"  *Id.*  Lindsey also requested counsel.  *Id.*

Later in the questioning, Lindsey asked Detective Butler if he could use the bathroom. *Id.*  Three or four unidentified officers allegedly rear-cuffed Lindsey upon his exiting the bathroom and forcefully knocked him to the floor while Detective Werner "forcibly shaved Plaintiff['s] facial hair."  *Id.*  Despite Plaintiff's objections and request to contact counsel, Detective Butler commanded that Lindsey be shaved.  *Id.* ¶ 12.  Specifically, according to Plaintiff, "Detective Sean Butler gave the Order to Detective Richard Werner to shave plaintiff['s] facial hair which was then done."  Pl. Opp. Mem. L. 1.

---

[3] For purposes of the instant motion, the Court assumes the allegations in Plaintiff's Amended Complaint and opposition to the motion to dismiss to be true and relies exclusively on the information contained therein.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (instructing that a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

In addition to being forcibly shaven, Plaintiff suffered "various injuries" as a result of Defendants' conduct, including a mild concussion from being slammed on the floor and lower back pain.  Am. Compl. ¶ 21.  Detective Butler denied Plaintiff's requests for medical attention, "stating that there is no medical here and you're not getting medical assistance or [a]ttention." *Id.*

Plaintiff alleges that former NYPD Commissioner Ray Kelly ("Commissioner Kelly") "excersized [*sic*] deliberate indifference in his position as Commissioner, where he knew that his subordinates had been following his unwritten policies and practices to use excessive force upon Plaintiff a Muslim to forcefully shave a Muslim Beard without seeking a court order for permission to do this . . . as required by law."  *Id.* ¶ 32.

Lindsey further alleges that all of the defendants are "Pro-White officials of the city, acting with racial [a]nimus while attacking Plaintiff who is [a] Black Sunni Muslim by forcefully shaving his facial hair with no right to do so."  *Id.* ¶ 27.

### b.  Procedural Background

Plaintiff requested leave to proceed *in forma pauperis* on December 12, 2011, and filed the original complaint that day.  Doc. 2.  The original complaint brought claims under the First, Fourth, Eighth, and Fourteenth Amendments.

Defendants moved to dismiss the original complaint on November 30, 2012 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Doc. 24.  Plaintiff did not file an opposition to the motion to dismiss, but did file a submission on January 18, 2013 entitled "Motion to Amend Pursuant to Fed. R. Civ. P. 15(a)," which attached a proposed amended complaint.  On January 23, 2013, Defendants opposed Plaintiff's motion to amend, arguing that the proposed amended complaint would be futile.

3

On June 24, 2013, the Court granted Plaintiff's motion to amend with respect to the First Amendment claim and the Fourteenth Amendment due process claim, but denied the motion with respect to the claims under the Equal Protection Clause and the Fifth and Sixth Amendments as well as the claims against the City of New York. *See Lindsey v. Butler*, No. 11 Civ. 9102 (RWS), 2013 WL 3186488, at *1 (S.D.N.Y. June 24, 2013).[4]

Plaintiff filed the Amended Complaint on September 3, 2013, bringing claims under the First, Fourth, Eighth, and Fourteenth Amendments. Doc. 37. Defendants moved to dismiss the Amended Complaint on November 15, 2013. Doc. 41.[5] Plaintiff opposed Defendants' motion on December 20, 2013. Doc. 47.

## II.    Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Fed. R. Civ. P. 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of

---

[4] The motion to amend was decided by the Honorable Robert Sweet, to whom this case was previously assigned. The case was reassigned to this Court on August 19, 2013.

[5] By letter dated December 10, 2013, Plaintiff requested, *inter alia*, that the Court appoint him *pro bono* counsel. *See* Doc. 45. On December 18, 2013, the Court denied Plaintiff's request because it could not conclude that Plaintiff's claims were likely to have merit at this stage of the proceedings. Doc. 46.

discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In the case of a *pro se* plaintiff, a court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006).  The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  Additionally, as the Second Circuit recently held, "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker*, 717 F.3d at 122 n.1 (emphasis added).

## III.   Discussion

### a.   Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a defendant must have been acting under the "color of state law" when he deprived the plaintiff of a constitutional or federal statutory right. *West v. Atkins*, 487 U.S. 42, 48 (1986).  Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  The Second Circuit has held that it is "well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section 1983." *Farrell v. Burke*, 449

F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal

quotation marks omitted).

   **b. First Amendment**

   Plaintiff claims that Defendants violated his First Amendment rights in two ways.  First,

he charges that Detectives Butler and Werner exercised deliberate indifference toward the free

exercise of his religion by forcibly shaving his beard.  Am. Compl. ¶¶ 18, 17.  Lindsey further

alleges that the NYPD acted on unwritten policies and practices to use excessive force to shave

his beard.  *Id.* ¶ 32.

   The First Amendment provides in part that "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend I.

The Free Exercise Clause protects against "governmental compulsion either to do or refrain from

doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or

required by one's religion."  *Mozert v. Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058, 1066 (2d Cir.

1987), *cert. denied*, 484 U.S. 1066, 108 S. Ct. 1029 (1988).  The Clause therefore "recognizes

the value of religious training, teaching and observance and, more particularly, the right of every

person to freely choose his own course with reference thereto, free of any compulsion from the

state."  *Sch. Dist of Abington Twp. v. Schempp*, 374 U.S. 203, 222, 83 S. Ct. 1560 (1963).  To

state a claim under the Free Exercise Clause, a plaintiff must demonstrate that the official

conduct at issue operated coercively against plaintiff "in the practice of his religion."  *Harris v.

McRae*, 448 U.S. 297, 321, 100 S. Ct. 297 (1980) (internal quotation marks and citation omitted).

   Defendants look to *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), for the argument

that any infringement on Lindsey's sincerely held religious beliefs must be balanced against the

"legitimate penological objective" advanced in shaving his beard.  Defs. Mem. L. 15-16.[6]

Defendants further argue that related limitations on a prisoner's right to freely exercise his

religion have been upheld under this framework.  *See Singh v. Goord*, 520 F. Supp. 2d 487, 507

(S.D.N.Y. 2007) (prison directive related to hair and shave requirements upon initial

incarceration ruled constitutional because it "serves a legitimate penological interest in

maintaining prison security and a record of prisoners' appearances in case of escape").  While

there is support in this Circuit for the application of the standard set forth in *Farid* to arrestees,[7]

the Court declines to extend *Farid*—which evaluated a *prison* regulation and its infringement on

the constitutional rights of *inmates* by determining whether the regulation was reasonably related

to legitimate *penological* interests—to the custodial interrogation setting.[8]

      In its decision on Plaintiff's motion to amend, the Court noted that "[t]he Second Circuit

has held that the threshold for impinging upon the constitutional rights of those in prisons is

different – and lower – than the threshold for those in jails."  *Lindsey*, 2013 WL 3186488, at *2.

Specifically, in *Shain v. Ellison*, 273 F.3d 56, 66 (2d Cir. 2001), the Second Circuit distinguished

jails from prisons in the context of strip searches.  The court concluded that individuals in

custody in local correctional facilities or jails "have a right to be free of strip search absent

reasonable suspicion that they are carrying contraband or weapons," whereas strip searches in

---

[6] In *Farid*, the Second Circuit relied on *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400 (1987), for the principle that "a prison regulation that impinges on inmates' constitutional rights may be valid if it is reasonably related to legitimate penological interests."  850 F.2d at 925.

[7] *See Azor v. City of New York*, No. 08 CV 04473 (RJD) (LB), 2012 WL 1117256, at *5 n.7 (E.D.N.Y. Mar. 30, 2012) ("Although plaintiff's Free Exercise challenge relates to his pre-trial detention, the Court is unaware of a pretrial standard separate from that applied to Free Exercise claims by post-trial detainees.").

[8] *See Farid*, 850 F.2d at 925 ("Although prison inmates retain some protections afforded by the first amendment, 'prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400 (1987)).

prisons are subject to the legitimate penological interest test.  *Id.*  Lindsey's rights are

presumably entitled to equal or greater protection than the arrestees and pretrial detainees in

*Shain* because, according to the Complaint, he "was merely detained in a police station (not a

local correctional facility or jail) following his arrest, and had not yet even been charged with a

crime."  *Lindsey*, 2013 WL 3186488, at *2.

Outside the prison context, a law that is neutral and of general applicability need not be

justified by a compelling governmental interest even if the law has the incidental effect of

burdening a particular religious practice.[9]  However, a law failing to satisfy these requirements

must be justified by a compelling governmental interest and narrowly tailored to advance that

interest.  *See Bronx Household of Faith v. Bd. of Educ.*, 855 F. Supp. 2d 44, 53 (S.D.N.Y. 2012)

(quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993));

*see also Litzman v. New York City Police Dep't*, No. 12 Civ. 4681 (HB), 2013 WL 6049066, at

*4 (S.D.N.Y. Nov. 15, 2013) ("To withstand strict scrutiny, [the rule here] must advance

interests of the highest order and must be narrowly tailored in pursuit of those interests.").

Construed liberally, Plaintiff has alleged that the NYPD maintains an unwritten policy

and practice to forcibly shave Muslim men without seeking court orders for purposes of

conducting police lineups.  Am. Compl. ¶ 32.  Accordingly, because Plaintiff has specified only

that Muslims are targeted under this policy and practice, the challenged policy and practice

---

[9] The parties have not cited to, and the Court has not found, any federal precedent analyzing the constitutionality of forced grooming in the custodial interrogation context, or specifically to facilitate a police lineup.  By contrast, there is no shortage of cases reviewing the constitutionality of grooming policies in the prison setting.  In particular, courts in this Circuit have consistently upheld New York State Department of Corrections and Community Supervision's Directive 4914, which imposes haircut and shave requirements for all male inmates upon initial incarceration.  *See, e.g.*, *Singh*, 520 F. Supp. 2d at 507; *Phillips v. Coughlin*, 586 F. Supp. 1281, 1285 (S.D.N.Y. 1984) (initial shave requirement found to be the "least intrusive method available for satisfying a compelling penological interest . . ."); *Solomon v. Chin*, No. 96 CIV. 2619 (DC), 1998 WL 473953, at *3-4 (S.D.N.Y. Aug. 10, 1998) (relying on *Phillips* to dismiss challenge to Directive 4914).  For the reasons stated above, the Court will not rely on these cases, which involved analysis of a prison policy.

would not be neutral and of general applicability.  Defendants would therefore be required to

justify this policy through a compelling governmental interest and demonstrate that it is narrowly

tailored to advance that interest.

Defendants argue that shaving Lindsey's face in the context of a custodial interrogation

would serve the same security interests as prison grooming policies, as well as ensure that a

reliable identification could be made at the police lineup.  Defs. Mem. L. 16.

First, the Court notes that the reliable identification of suspects of crime is of course a

legitimate state interest.  *See, e.g.*, *United States v. Amerson*, 483 F.3d 73, 87 (2d Cir. 2007)

(noting in the context of DNA-based records that "[t]here can be little doubt that the government

has a compelling interest in rapidly and accurately solving crimes . . . ."); *Jones v. Murray*, 962

F.2d 302, 306 (4th Cir. 1992) ("[W]hen a suspect is arrested upon probable cause, his

identification becomes a matter of legitimate state interest and he can hardly claim privacy in it.

We accept this proposition because the identification of suspects is relevant not only to solving

the crime for which the suspect is arrested, but also for maintaining a permanent record to solve

other past and future crimes.").  In the Fifth Amendment context, courts have also ruled that

forcing a suspect to alter his appearance for the purpose of participation in a police lineup does

not violate the right against self-incrimination.  *See, e.g.*, *United States v. Wade*, 388 U.S. 218,

222 (1967) (compelling a robbery suspect to alter his appearance by wearing strips of tape on his

face while participating in a lineup does not violate his Fifth Amendment rights).  Here, while

Defendants claim that the reliable identification of suspects in a police lineup is a legitimate state

interest—and though it may be—they have not argued or demonstrated that shaving Plaintiff's

beard was narrowly tailored to advance this interest.

The Court also accepts that reasonable security concerns are present in jails and police

stations.  However, there is nothing to suggest that Detectives Butler and Werner or the officers present for the interrogation shaved Lindsey's beard in order to ensure their safety or the safety of other arrestees.  Instead, the Amended Complaint alleges that the officers shaved his beard during a station house interrogation for the specific purpose of facilitating a lineup.  Indeed, the Amended Complaint specifically alleges that he was forcibly shaved because the "fillers" who happened to be gathered by the Police did not have facial hair.  It requires little imagination to conceive of alternative ways to fashion an appropriate lineup without impinging on Plaintiff's religious freedom.  While discovery may well refute Plaintiff's factual allegations, the Court is required to credit them at this juncture.  Accordingly, Plaintiff has stated a sufficient claim that his First Amendment right of religious freedom was violated.

For these reasons, Defendants' motion to dismiss the First Amendment claim is DENIED.

### c.  Eighth Amendment

Plaintiff claims that the officers subjected him to excessive force in violation of the Eighth Amendment.  The Court must dismiss this claim because the Eighth Amendment attaches only after conviction.  *See De Campoamor v. Horodecki*, 122 F.3d 1055, at *2 (2d Cir. 1997) ("Even absent a procedural default, [plaintiff's] argument is without merit.  Eighth Amendment protections against the use of force attach only after conviction" (citing *Whitley v. Albers*, 475 U.S. 312, 318-26, 106 S. Ct. 1078 (1986)); *Wims v. New York City Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) ("[T]he Eighth Amendment does not attach until after conviction and sentencing, as 'it was designed to protect those convicted of crimes' (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401 (1977)).  Because the excessive force claim arises in the context of a custodial interrogation during the

arrest process, the constitutional right at issue derives from the Fourth Amendment.  *See Zhao v. City of New York*, 656 F. Supp. 2d 375, 389 (S.D.N.Y. 2009); *Pulliam v. Lilly*, No. 07-CV-1243 (SJF) (AKT), 2010 WL 935383, at *4 (E.D.N.Y. Mar. 11, 2010).

### d.  Fourth Amendment

Lindsey alleges that Detectives Butler and Werner violated his Fourth Amendment rights by forcing him to the ground and holding him against his will while shaving his beard without a court order.  Am. Compl. ¶¶ 25-27.  In analyzing the Fourth Amendment claim, the trier of fact must consider the reasonableness of the officers' conduct, and in particular "whether, in light of the circumstances confronting the officer, the amount and nature of the force used was 'objectively reasonable.'"  *Zhao*, 656 F. Supp. 2d at 389 (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865 (1989)).[10]  The analysis requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted).  As the Second Circuit has noted in the context of effecting an arrest, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened against the officer."  *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).  The determinative issue is the nature of the force used, rather than the nature of the injury.  *See Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) ("[W]hile the extent of the injury suffered . . . is one factor to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim." (internal quotation marks and citation

---

[10] The Fourth Amendment analysis of excessive force is an objective test that does not take underlying intent or motive into account.  *See Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).  Plaintiff's allegation that the officers were "Pro-White officials of the city, acting with racial [a]nimus while attacking Plaintiff who is [a] Black Sunni Muslim" is therefore irrelevant to the analysis.  Am. Compl. ¶ 27.

omitted)); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Here, the officers were not effecting an arrest, but instead conducting a custodial interrogation at the precinct.  Courts have found that the use of any force is often unwarranted in the latter context.  Lindsey alleges that three or four officers rear-cuffed him and knocked him to the ground so that Detective Werner could forcibly shave his beard.  Am. Compl. ¶ 29. According to Lindsey, this application of force caused him to endure "various injuries," including a mild concussion, dizziness, and lower back pain.  *Id.* ¶ 21.  By way of comparison, in *Zhao*, the plaintiff claimed that following his arrest for murder, he was subjected to interrogations at two different precincts.  656 F. Supp. 2d at 384.  The plaintiff alleged that during the course of these interrogations, an NYPD sergeant "'patted' him on the face," and a detective "screamed at him, pushed his face down to the table, threatened him with physical harm (including prison assaults), and threatened his family with deportation." *Id.*  The court noted, however, that "the record offers not the slightest justification for the use of *any force* against Zhao during his interrogation." *Id.* at 391 (emphasis added).  Indeed, "he was in custody, surrounded by at least two police detectives, and located within two presumably highly secure police precincts." *Id.*  Moreover, "and most crucially, there is no indication that at any point he offered or threatened any physical resistance or was in any other way uncooperative with the police except insofar as he initially declined to admit his guilt for a crime that he insisted he had not committed." *Id.*  The court concluded that "[i]t necessarily follows" that the forced used

against the plaintiff was unreasonable.  *Id.*[11]  Similarly, in *Pulliam*, the plaintiff claimed that during the course of a custodial interrogation, "he was strangled, his arm was pulled back, he was placed in a choke hold, he was slapped, and he was punched in the back."  2010 WL 935383, at *5.  The court noted that because "the record is devoid of any evidence reflecting a reason for the use of any force during the interrogation, . . . the use of more than *de minimis* force, if even that, under the circumstances presented here, would not be objectively reasonable."  *Id.* at *4 (citing *Zhao*, 656 F. Supp. 2d at 391);[12] *see also Campbell v. City of New York*, No. 06 CV 5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010) (noting with respect to the plaintiff's allegation that he was slapped and burnt with a cigarette during a custodial interrogation that "the minimal evidence of injury does not render his claim *de minimis* and ripe for dismissal.  It is the *force* used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." (citing *Zhao*, 656 F. Supp. 2d at 391)).

    Lindsey claims that Detectives Butler and Werner asked him if he would allow them to shave his face for the purposes of the line-up, and that he said no.  Am. Compl. ¶ 29.  According to Plaintiff, there was no further discussion, and he did not make any contact with the officers; instead, he simply asked Detective Butler if he could use the bathroom.  *Id.*  Plaintiff claims that it was the officers who then initiated the contact with him as he exited the bathroom.  *Id.*  There is no allegation that Plaintiff resisted the officers before, during, or after he was rear-cuffed and

---

[11] *See also Zhao*, 656 F. Supp. 2d at 391 ("[T]he alleged excessive force did not occur at the time of the arrest.  Rather, it took place while plaintiff was being questioned at two precincts, and the record reflects no reason for any force at that stage.  In such circumstances any force is potentially illegitimate—again depending on the circumstances—and hence the notion that the injury must be more than '*de minimis*' to trigger an assessment of a Fourth Amendment claim appears unjustified.").

[12] Despite its discussion of the unreasonableness of force in the custodial interrogation, the court in *Pulliam* granted the defendants' motion for summary judgment because it found the plaintiff's injuries—"a cut or abrasion in the facial area, a swollen eye and neck stiffness"—"mostly inconsistent" with the excessive force allegations.  2010 WL 935383, at *5.  Instead, the court found the injuries "wholly consistent" with witnesses' accounts of the plaintiff's "struggle" with his alleged robbery victim.  *Id.*

forced to the ground.

Plaintiff's allegation that he was pushed to the ground without provocation with enough pressure to cause a mild concussion, dizziness, and lower back pain supports the conclusion that such force was excessive in this context.[13]  Accordingly, the Court finds that Plaintiff has succeeded in stating a claim for a Fourth Amendment violation.  Additionally, because the issue of excessive force is ultimately a question for the jury, *see Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999), dismissal would not be appropriate on these facts.

Accordingly, Defendants' motion to dismiss the Fourth Amendment claim is DENIED.

### e.  Qualified Immunity

Plaintiff alleges that Detective Butler commanded Detective Werner to forcibly shave Plaintiff's facial hair.  Pl. Opp. Mem. L. 1.  Defendants contend that Plaintiff's claims against Detective Butler must be dismissed under the doctrine of qualified immunity because Detective Butler's alleged conduct was objectively reasonable and did not violate a clearly established right.  Defs. Mem. L. 18.  In particular, Defendants note the Court's characterization of *Ross v. Coughlin*, 669 F. Supp. 1235 (S.D.N.Y. 1987), as the "single case in the Circuit addressing the forcible shaving of a detainee in the context of a due process analysis,"[14] for the principle that

---

[13] Furthermore, even if it could be said that Plaintiff's injuries were minor or temporary, this would make little difference to the Court's analysis.  *See Zhao*, 656 F. Supp. 2d at 391 ("Zhao further testified that [the detective's pressing of plaintiff's head against the table] left him in pain for about an hour.  Such transient pain should suffice for the claim to survive summary judgment."); *Richardson v. Providence*, No. 09-CV-4647 (ARR) (LB), 2011 WL 3701887, at *7 n.3 (E.D.N.Y. Aug. 22, 2011) ("[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim" (citing sources)).

[14] In *Ross*, an Orthodox Jewish inmate in the custody of the New York State Department of Correctional Services brought a due process claim based on prison officials' alleged use of excessive force in the shaving of his facial hair. 669 F. Supp. at 1242.  There, upon his arrival at the Downstate Correctional Facility for incarceration, the plaintiff was allegedly "pushed into [a] barber's chair and poked with clubs while prison officials shaved his head and beard." *Id.* at 1238.  The court concluded that it was "not clear" whether there was a due process violation and noted that there was "no indication that the officials needed to use their clubs to get [the plaintiff] to comply with their orders." *Id.*  The court allowed the plaintiff to submit affidavits "to confirm the extent of the violations" before determining whether to dismiss the claim.  *Id.*  In ruling that Defendants failed to demonstrate that amendment of

Detective Butler therefore could not have known that such conduct violated Lindsey's Fourth Amendment rights. *Lindsey*, 2013 WL 3186488, at *3.  The Court disagrees.

Under the qualified immunity doctrine, Detective Butler's defense would be viable "only if it were objectively reasonable for [him] to believe that [his] conduct did not violate the Fourth Amendment." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (internal citations omitted). Courts in this Circuit have made clear that, "[s]ince the law in this area is well-established, in Fourth Amendment unreasonable force cases, . . . the qualified immunity inquiry is the same as the inquiry made on the merits." *Washpon v. Parr*, 561 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).[15]  Here, it was objectively unreasonable for the officers to exert any force against Lindsey, an arrestee who—according to the Amended Complaint—did not use or threaten any force against them.  Moreover, because there is nothing in the record to suggest that the officers were entitled to shave Plaintiff, any use of force to accomplish this act would have been unjustified.  Accordingly, if the force applied to Plaintiff was unreasonable, so too would have been Defendant Butler's orders to apply such force. Defendants' motion to dismiss the Amended Complaint against Detective Butler on the basis of qualified immunity is therefore DENIED.[16]

---

Lindsey's due process claim would be futile, the Court stated that *Ross* was "[t]he sole instance of directly on-point authority that has been identified . . . ." *Lindsey*, 2013 WL 3186488, at *4.  It is worth noting the distinction that the plaintiff in *Ross* was a convicted prisoner at the Downstate Correctional Facility at the time his head and beard were allegedly forcibly shaved.  *Ross*, 669 F. Supp. at 1238.

[15] *See also Usavage v. Port. Auth.*, 932 F. Supp. 2d 575, 594 (S.D.N.Y. 2013) ("Because the clearly established Fourth Amendment excessive force inquiry also hinges on a determination of objective reasonableness, . . . the analysis ultimately converges on one question:  Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." (internal quotation marks and citation omitted)).

[16] Because Defendant Werner has not been served, Defendants do not argue that the claims against him should be dismissed on the basis of qualified immunity.  However, any such defense would be denied for the same reasons as with Detective Butler.

### f.  Municipal Liability

In its Order dated June 24, 2013, the Court found Plaintiff's request for leave to amend its claim against the City to be futile.  *Lindsey*, 2013 WL 3186488, at *5.  That finding constitutes law of the case and Defendants' motion to dismiss the claims against the City is therefore GRANTED.

### g.  Claims Against Commissioner Kelly

Defendants further argue that Plaintiff's claims against former Commissioner Kelly must be dismissed because Lindsey has failed to show the Commissioner's personal involvement in the officers' conduct.  Plaintiff alleges that Commissioner Kelly "excersized [*sic*] deliberate indifference in his position as Commissioner, where he knew that his subordinates had been following his unwritten policies and practices to use excessive force upon Plaintiff a Muslim to forcefully shave a Muslim Beard without seeking a court order."  Am. Compl. ¶ 32.

To state a claim under Section 1983, a plaintiff must allege the personal involvement of each defendant.  *See, e.g.*, *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).  "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates."  *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *2 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).  In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit established that the personal involvement of a supervisory defendant may be shown by evidence that the defendant (1) participated directly in the alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning about it; (4) was grossly negligent in supervising the officers involved; or

16

(5) exhibited deliberate indifference to the plaintiff's rights by failing to act on information

indicating that unconstitutional acts were occurring.  In *Iqbal*, the Supreme Court noted that

"[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  556 U.S. at 676.  As the Second Circuit recently observed, the limitation on

supervisory liability in *Iqbal* "has, of course, engendered conflict within our own Circuit about

the continuing vitality of the supervisory liability test set forth in *Colon* . . . ."  *Reynolds v.*

*Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012); *see also Aguilar v. Immigration & Customs*

*Enforcement Div.*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) ("The Court of Appeals has not yet

definitively decided which of the *Colon* factors remains a basis for establishing supervisory

liability in the wake of *Iqbal*, and no clear consensus has emerged among the district courts

within the circuit.").  Regardless of the viability of the factors established in *Colon*, Plaintiff has

failed to plead the requisite personal involvement to sustain the claims against former

Commissioner Kelly.

   Because the Amended Complaint suggests that the alleged unwritten policies and

practices were created or adopted by Commissioner Kelly,[17] the Court will consider Lindsey's

pleading in view of the third factor above.  In order to hold supervisors liable for creating a

custom or policy fostering a constitutional violation, courts in this Circuit have required that

plaintiffs plead more than conclusory allegations of the existence of the custom or policy.  *See*

*Koehl v. Bernstein*, No. 10 Civ. 3808 (SHS) (GWG), 2011 WL 2436817, at *19 (S.D.N.Y. June

17, 2011), *adopted by*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011) ("While personal

involvement of a supervisor may be established by showing that he a created a policy or custom

---

[17] *See* Am. Compl. ¶ 32 (". . . *his* unwritten policies and practices . . ." (emphasis added)).

under which the violation occurred, conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." (internal citation omitted)).  In *Burgis v. Dep't of Sanitation City of New York*, No. 13 Civ. 1011 (TPG), 2014 WL 1303447, at *6 (S.D.N.Y. Mar. 31, 2014), the court dismissed claims against New York City's sanitation commissioner where the plaintiffs alleged that the Department of Sanitation and its commissioner discriminated against Hispanic and African-American sanitation workers who applied for promotion to supervisory and superintendent positions.  The court ruled that the claim against the commissioner was deficient because "plaintiffs fail to plead with particularity an official policy, custom, or practice" pursuant to which the allegedly discriminatory actions were taken.  *Id.*  The court noted that "[c]ourts have repeatedly held that including boilerplate language alleging the existence of a policy, without factual allegations to support it, is not enough at the pleading stage."  *Id.*  Similarly, in *Burns v. Martinez*, the plaintiff claimed that he was assaulted in the intake area at the Downstate Correctional Facility as a "result of an unwritten policy of 'orientation brutal intimidation tactics.'"  No. 08 Civ. 4835 (LAK) (JCF), 2008 WL 5429644, at *1 (S.D.N.Y. Dec. 24, 2008) (internal citation omitted).  The court determined the plaintiff's allegations against Downstate's superintendent to be deficient because "[w]hile [the plaintiff] asserts that Superintendent Annetts 'governs' a specific unwritten policy of 'orientation brutal intimidation tactics,' he does not allege any facts supporting the existence of such a custom or policy."  *Id.* at *2.[18]

       Here, Lindsey has vaguely suggested that "unwritten policies and practices" were created

---

[18] *See also Koehl*, 2011 WL 2436817, at *19 ("[T]he claim fails because [plaintiff] makes only a conclusory allegation that [the individual defendants] 'created and enforced unconstitutional customs and policies that . . . continually denied [him] adequate clothing for the weather.'" (internal citation omitted)); *Rounds v. Thompson*, No. 9:12-cv-953 (GLS/TWD), 2013 WL 3187074, at *6 (N.D.N.Y. June 20, 2013) ("Furthermore, conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories [for supervisory liability].").

or adopted by Commissioner Kelly, and that Commissioner Kelly exercised deliberate indifference to their enforcement.  Without more than the allegations related to the single incident in the station house, however, Plaintiff's pleadings are insufficient as against Commissioner Kelly.  *See Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Allegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983." (citing *Strano v. City of New York*, No. 97 Civ. 0387, 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998)).  Accordingly, Defendants' motion to dismiss the claims against Commissioner Kelly is GRANTED.

**IV.    Claims Against Detective Werner**

The Amended Complaint also names Detective Richard Werner as a defendant. However, Detective Werner has yet to be served.  Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve a defendant within 120 days after the complaint is filed.  The original complaint was filed on December 12, 2011.  Doc. 2.  On February 17, 2012, the Court extended Plaintiff's time to serve by 90 days.  Doc. 9.  To date, Plaintiff has not served Detective Werner with the Summons and Complaint.  *See* Marshall's Process Receipt and Return of Service Unexecuted, filed May 4, 2012.  Doc. 14.

Rule 4(m) requires that a court provide notice to a plaintiff before dismissing a claim *sua sponte* for failure to serve process.  *See Nagy v. Dwyer*, 507 F.3d 161, 164 (2d Cir. 2007). Accordingly, the Court will afford Plaintiff sixty (60) days from the date of this Order to show good cause why he has not served Detective Werner.  *Cf. Chavis v. Zodlow*, 128 F. App'x 800, 802 (2d Cir. 2005).  If Lindsey fails to show good cause during this period, the claims against Detective Werner will be dismissed without prejudice.

19

**V.   Conclusion**

For the reasons set forth above, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 41, and to mail a copy of this Opinion and Order to Plaintiff.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


It is SO ORDERED.

Dated:      August 29, 2014
            New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.