UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY LINDSEY,

                        Plaintiff,

              - against -

DETECTIVE SEAN BUTLER and
DETECTIVE RICHARD WERNER,

                        Defendants.

**ORDER**

11 Civ. 9102 (ER)

Ramos, D.J.

    *Pro se* plaintiff Anthony Lindsey brings this action pursuant to 42 U.S.C. § 1983, alleging that Detectives Sean Butler and Richard Werner violated his constitutional rights when they forcibly shaved his facial hair over his religious objection during post-arrest questioning on December 16, 2008.  Pending before the Court is Plaintiff's motion to compel discovery.  Doc. 107.  For the reasons set forth herein, Plaintiff's motion is GRANTED in part and DENIED in part.

**I.    Factual Background[1]**

    Plaintiff, a practicing Black Sunni Muslim, was arrested on December 16, 2008, by Detectives Sean Butler and Richard Werner of the New York Police Department ("NYPD").  Am. Compl. ¶¶ 8, 10.  Plaintiff was transported to the NYPD's Sixth Precinct before being transferred to the Manhattan Robbery Squad Building.  *Id.* ¶ 11.  After several hours of questioning, Detectives Butler and Werner arranged for a police lineup.  *Id.* ¶ 29.  When the "fillers" arrived

---

[1] The following facts are based on allegations in Plaintiff's Amended Complaint ("Am. Compl.") (Doc. 37).  The facts recited herein do not constitute findings of fact by this Court.

for the lineup, the detectives realized that they were all "clean shaven and none were similar to Plaintiff." *Id.* Because the detectives "could not place [Plaintiff] in the line-up where Plaintiff was [the] only one with facial hair," they asked Lindsey "if he would forfeit his religious rights and allow them to shave his face." *Id.* Plaintiff objected, "NO!" *Id.* Lindsey also requested counsel. *Id.*

Later in the questioning, Lindsey asked Detective Butler if he could use the bathroom. *Id.* When Lindsey exited the bathroom, several unidentified officers rear-cuffed him and knocked him down to the floor while Detective Werner "forcibly shaved Plaintiff['s] facial hair." *Id.* Plaintiff alleges that Detective Butler ordered the shaving, despite Lindsey's objections and request to contact counsel. *Id.* ¶ 12.

Plaintiff alleges that he suffered "various injuries" as a result of Defendants' conduct, including a mild concussion from being slammed on the floor and lower back pain. Am. Compl. ¶ 21. According to Plaintiff, Detective Butler denied his requests for medical attention, "stating that there is no medical here and you're not getting medical assistance or [a]ttention." *Id.*

## II. Procedural Background

Plaintiff filed an Amended Complaint on September 3, 2013, bringing claims under the First, Fourth, Eighth, and Fourteenth Amendments. Doc. 37. In addition to Detectives Butler and Werner, Plaintiff named former NYPD Commissioner Raymond Kelly and the City of New York as Defendants. *Id*. On August 29, 2014, the Court dismissed Plaintiff's Eighth Amendment claim, as well as all claims against former NYPD Commissioner Raymond Kelly and the City of New York. Doc. 50. The Court further held that the Amended Complaint stated a claim under the First Amendment and the Fourth Amendment, and denied Detective Butler's motion to dismiss the Fourth Amendment claim on the basis of qualified immunity. Detective Butler

moved for partial reconsideration of the Court's decision, arguing that the Court should have granted his motion to dismiss the First Amendment claim on the basis of qualified immunity. The Court dismissed the First Amendment claim on November 5, 2014. Doc. 59. Accordingly, Plaintiff's only remaining claim is for excessive force under the Fourth Amendment.

In March 2016, the Court was made aware of a discovery dispute between the parties. Doc. 81. On March 7, 2016, the Court received a letter from Plaintiff indicating that Defendants had not responded to the discovery demands Plaintiff served on them on January 11, 2016. Doc. 81. Plaintiff's discovery demands consisted of 20 interrogatories and 13 document requests. Doc. 112-2. On March 9, 2016, the Court directed Defendants to respond to Plaintiff by March 16, 2016. On March 14, 2016, Plaintiff filed a motion to compel Defendants to respond to Plaintiff's interrogatories and document requests, suggesting that Defendants had not complied with the Court's March 16, 2016 Order. Doc. 82. In a letter filed on April 11, 2016, Defendants informed the Court that they had indeed served responses and objections to Plaintiff's discovery demands on Plaintiff by March 16, 2016. Doc. 84. Accordingly, the Court denied Plaintiff's motion to compel as moot on May 5, 2016. Doc. 86. The Court also directed the parties to meet and confer regarding Defendants' objections to Plaintiff's discovery requests. *Id*. The Court stated that if, after such discussions, the parties were still unable to resolve their discovery dispute, Plaintiff would be granted leave to file a motion to compel. *Id*.

The discovery dispute between the parties continued. On June 17, 2016, Plaintiff once again requested the Court's intervention by compelling Defendants to answer his interrogatories and document requests. Doc. 87. In a June 24, 2016 letter, Defendants informed the Court that they had requested that Plaintiff write them a letter setting forth his particularized objections to their responses and objections to Plaintiff's discovery demands. Doc. 89. Defendants indicated

3

that Plaintiff responded by letter on May 16, 2016, but failed to address his objections. *Id*. According to Defendants, Plaintiff had "repeatedly elected not to explain his positions in writing to defense counsel or make good faith efforts to confer about the litigation." *Id*. In an effort to move the action forward, Defendants proposed that the parties proceed to conduct Plaintiff's deposition and that, at the deposition, the parties address and hopefully resolve any discovery disputes in person. *Id*. On June 27, 2016, the Court directed Plaintiff to provide Defendants with a detailed written explanation of his objections to their discovery responses. Doc. 92. In the event that the parties were unable to resolve the dispute by July 27, 2016, the Court directed the parties to proceed with Plaintiff's deposition and to meet and confer regarding the discovery dispute during the deposition. *Id.* The Court stated that if, after such discussion, the parties were still unable to resolve their dispute, Plaintiff would be granted leave to file a motion to compel. *Id*.

The dispute continued throughout the year, culminating in an Order of this Court, entered October 17, 2016, directing Defendants to (i) provide Plaintiff with a written explanation of their position regarding the scope of his discovery demands by no later than October 21, 2016; (ii) depose Plaintiff by November 17, 2016 if they wished to do so; (iii) meet and confer with Plaintiff regarding the discovery dispute at Plaintiff's deposition; and (iv) provide the Court with an update on Plaintiff's deposition and the discovery dispute by no later than November 18, 2016. Doc. 101 (the "October 17, 2016 Order").

On or around November 18, 2016, Plaintiff filed a motion to compel Defendants to respond to his discovery demands. Doc. 107. According to Plaintiff, Defendants "disregarded" the October 17, 2016 Order directing the parties to discuss the discovery dispute at Plaintiff's deposition. *Id.* Because Defendants had failed to provide the Court with an update on the

discovery dispute by November 18, 2016, as directed in the October 17, 2016 Order, the Court issued an Order to show cause for why Defendants should not be sanctioned for failure to comply with the October 17, 2016 Order. Doc. 108.

Defendants filed a letter on December 5, 2016, explaining that their failure to provide the Court with an update by November 18, 2016 was due to oversight. Doc. 109. Defendants indicated that they deposed Plaintiff via videoconference on November 10, 2016, and attempted to confer with Plaintiff regarding the discovery dispute after the deposition. *Id*. Defendants stated that their efforts to confer with Plaintiff were unsuccessful because "Plaintiff was unwilling to cooperate" and "was not willing to try to resolve the parties' dispute." *Id*. The Court issued an Order on December 5, 2016 stating that it would not impose sanctions on Defendants for failure to comply with the October 17, 2016 Order, and set a briefing schedule for Plaintiff's motion to compel. Doc. 110.

Defendants filed their opposition to Plaintiff's motion to compel on December 19, 2016. Doc 112. As an exhibit, Defendants included their objections to Plaintiff's discovery demands. *Id*. Defendants object to all of Plaintiff's discovery requests and have not provided Plaintiff with any discovery material. *Id*. According to Defendants, the parties disagree about the proper scope of discovery. Doc. 112 at 1. Defendants submit that the scope of discovery should be limited to Plaintiff's alleged forcible shaving at the Manhattan Robbery Squad following his arrest. *See* Doc. 112 at 2. In addition, Defendants object to many of Plaintiff's discovery demands on the basis that they purportedly (1) assume facts not established, and (2) rely on factual premises which defendants deny and are unsupported by the evidence. *Id*. Defendants assert that Plaintiff's demands are "overbroad, unintelligible, vague, ambiguous, not sufficiently

limited in scope in light of the single claim at issue, and are not proportional to the needs of the case." *Id*. at 1-2.

## III. Legal Standard

Federal district courts have broad discretion in deciding motions to compel. *See Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The scope of discovery is generally limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

"The party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). "Rather, a party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase &*

*Co.*, 297 F.R.D. 99, 102–03 (S.D.N.Y. 2013) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984).

**IV.  Discussion**

Plaintiff requests that Defendants answer a set of 20 interrogatories and 13 document requests. Defendants assert that Plaintiff's demands are "overbroad, unintelligible, vague, ambiguous, not sufficiently limited in scope in light of the single claim at issue, and are not proportional to the needs of the case." See Doc. 112 at 1-2. Because Defendant's main objection to the requested discovery is based on relevance, the Court, at the outset, defines the appropriate scope of discovery. As stated, the Court dismissed Plaintiff's claim based on the act of shaving. However, his claim of excessive force during the shaving, which allegedly occurred immediately prior to the line-up, remains. Accordingly, discovery reasonably related to the events leading up to, during, and after the shaving are relevant to Plaintiff's remaining claim and within the scope of discovery.

For ease of reference, the Court groups Plaintiff's discovery requests thematically into the following categories:

1. Requests regarding the details surrounding the alleged shaving incident (Interrogatories 1, 5, 11, 14, 16, 19 and document requests 2 and 3);

2. Requests regarding the use of force to shave Plaintiff (Interrogatories 2, 12 and document requests 8, 10, 11);

3. Requests regarding the police-arranged line-up (Interrogatories 3, 4, 6, 9, 10, 15, and document requests 5, 6, 7, 9);

4. Requests for information that Defendants intend to use for their defense (Interrogatories 18, 20 and document request 12); and

5. Requests for information about Defendants (Interrogatories 7, 8, 13, 17 and document request 4).

Each category is discussed in turn.

### 1. Plaintiff's requests for details regarding the alleged shaving incident

Interrogatories 1, 5, 11, 14, 16, 19 and document requests 2 and 3 concern the details of the alleged shaving incident on December 16, 2008. Plaintiff requests that Defendants identify all persons who were present at or had knowledge of the events before the police-arranged line-up, where Defendants were at the time of the shaving, their shifts and locations on the date of the shaving, the exact time that the Plaintiff came into their custody on the date of the shaving, and who gave Defendants the order to shave Plaintiff's facial hair. Plaintiff also requests all documents regarding the incident. Doc 112.

Contrary to Defendants' assertion, details surrounding the shaving incident are within the scope of discovery because they are reasonably related to Plaintiff's claim of excessive force. While the shaving itself is no longer a subject of this action, Plaintiff alleges that Defendants used excessive use of force when they shaved him. Thus, information reasonably related to the events leading up to, during, and after the shaving are relevant and proportional to the needs of the case. Moreover, Plaintiff's requests are neither vague nor ambiguous as Defendants contend.

Defendants are directed to produce the information requested and to specifically state if they do not have information that is responsive to Plaintiff's particular discovery requests in this category.

### 2. Plaintiff's requests for information regarding use of force to shave Plaintiff

Interrogatories 2 and 12 and document requests 8, 10, and 11 concern the use of force allegedly used to shave Plaintiff. Plaintiff requests that Defendants identify all requests that were made to force Plaintiff to be shaved and identify all occasions where Defendants had to use force during their interactions with Plaintiff. Plaintiff further requests Defendants to produce the

warrant and judge's order to use force in holding Plaintiff down to shave him, the use of force reports, and witness statements of descriptions to warrant the shaving of Plaintiff. Doc 112.

Information regarding the use of force during the shaving incident falls squarely within the scope of discovery. Any requests made to shave Plaintiff forcibly and to identify Defendants' use of force are directly relevant to Plaintiff's remaining claim. Fed. R. Civ. P. 26(b)(1), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Defendants are directed to produce the information requested and to specifically state if they do not have information that is responsive to Plaintiff's particular discovery requests in this category.

### 3. Requests regarding the police-arranged line-up

Interrogatories 3, 4, 6, 9, 10, 15 and document requests 5, 6, 7, 9 concern the identities of all persons involved in the making of the line-up, all persons who participated in the line-up, information on whether Defendants have been trained on how to conduct a proper line-up, and the dates of Defendants' last trainings prior to the December 16, 2008 incident. Plaintiff also requests that Defendants identify the Standard Operating Procedure ("SOP") for conducting a line-up and to provide related documents, the warrant to alter Plaintiff's facial hair, and the judge's order to alter the appearance of Plaintiff to stand in the line-up. Doc 112.

Defendants contend that Plaintiff's requests are beyond the scope of discovery because they are vague, ambiguous, overbroad. Plaintiff's request for the identity of all persons who were present at the line-up is neither vague nor ambiguous. Individuals who were present at the line-up may have witnessed the alleged use of excessive force during Plaintiff's shaving, which

directly bears on Plaintiff's claim. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

However, given that the only issue remaining is the excessive force claim, the details surrounding the line-up itself are not likely to lead to the discovery of admissible evidence and are not proportional to the needs of the case insofar as the burden and expense of producing information outweigh any likely benefit. The Court finds that requests regarding the actual line-up, which took place after the shaving, fall outside the scope of discovery because they are not sufficiently relevant to Plaintiff's excessive force claim.

Defendants are directed to respond to interrogatory 4, which asks Defendants to identify and list all persons who participated in the police-arranged line-up, and to specifically state if they do not have responsive information. Plaintiff's motion to compel responses to interrogatories 3, 6, 9, 10, 15, and document requests 5, 6, 7, 9 is denied.

### 4. Plaintiff's requests for information that Defendants intend to use in their defense

Interrogatories 18 and 20 and document request 12 concern information Defendants intend to use in their defense. Plaintiff requests that Defendants identify contact information of individuals likely to have information that may be used to support their defense, a copy of all documents that may be used to support their defense, and all disclosures and correspondence between Defendants and counsel. Doc 112.

The Court agrees with Defendants that Plaintiff's request for information used to support the defense is overbroad and not sufficiently limited in scope. These requests are not tied to a specific subject matter or time, and therefore bear no specific relevance to the claims or defenses raised in this matter. *Mirmina v. Genpact LLC*, No. 3:16CV00614, 2017 WL 2559733, at *7 (D. Conn. June 13, 2017). Additionally, the Court agrees with Defendants that the burden of

responding to this portion of Plaintiff's discovery requests outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Taking into account the needs of the case and the importance of the proposed discovery in its resolution, these requests do not reasonably bear on Plaintiff's excessive force claim. *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). These requests are not relevant to Plaintiff's claims, and instead appear to be an investigation into Defendants' arguments against Plaintiff's contention, which is not allowed. *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (Plaintiff is not permitted to use the discovery process to investigate into unrelated matters). Moreover, to the extent Plaintiff seeks discovery regarding correspondence between Defendants and their counsel, such communication is protected by attorney-client privilege.

Plaintiff's motion to compel responses to these requests is denied.

**5. Plaintiff's request for information about Defendants**

Interrogatories 7, 8, 13, 17 and document request 4 concern information about Defendants. Plaintiff asks whether Defendants have been the subject of police brutality and the number of years they have been employed by the NYPD. Plaintiff also requests that Defendants identify every lawsuit to which they have been a party and asks whether Defendants have been the subject of complaints made to the Civilian Complaint Review Board and the Internal Affairs Bureau and to produce all related documents. Doc 112.

To the extent that Plaintiff requests information regarding prior investigations, complaints, or lawsuits against Defendants on the subject matter of use of excessive force, they are within the scope of discovery. Information regarding allegations of Defendants' past use of excessive force may reasonably bear relevance to Plaintiff's own claim. However, Plaintiff's requests go beyond that. The Court will not order Defendants to produce discovery material

regarding investigations, complaints, or lawsuits against Defendants that are not related to the use of excessive force. Additionally, Plaintiff's requests regarding whether Defendants have been the subject of police brutality and the number of years they have been employed by the NYPD have no reasonable connection to Plaintiff's claim in this case and the Court will not order Defendants to respond to these requests.

Defendants are directed to respond to interrogatory 8 and document request 4, and to specifically state if they do not have responsive information. Plaintiff's motion to compel responses to interrogatories 7, 13, and 17 is denied.

## V. Conclusion

To the extent that Defendants possess relevant information, the Court directs Defendants to respond to interrogatories 1, 2, 4, 5, 8, 11, 12, 14, 16, 19, and document requests 2, 3, 4, 8, 10, 11. Regarding document request 1, which seeks "all documents identified in the preceding interrogatories," Defendants are only directed to provide documents relating to interrogatories that have been identified as within the scope of discovery for Plaintiff's remaining excessive force claim. Defendants are directed to comply with this order by no later than October 16, 2017.

The Clerk of the Court is respectfully requested to terminate the motion, Doc. 107.

It is SO ORDERED.

Dated: September 18, 2017
      New York, New York

Edgardo Ramos, U.S.D.J.
United States District Judge